IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| JESSIE L. JOHNSON | § | |
| v. | § | CIVIL ACTION NO. 9:11cv8 |
| RICK THALER, ET AL. | § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT

The Plaintiff Jessie Johnson, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Johnson named TDCJ Director Rick Thaler, Oliver Bell, Chairman of the Texas Board of Criminal Justice, Jonie White, assistant director for classification for TDCJ-CID, Vanessa Jones, chairman of the State Classification Committee, Wayne Schmoker, vice chairman of the SCC, members of the SCC named Travis Turner, Steve Rogers, Edith Reeves, Dinah Lovelady, Paul Wilder, April Thompson, Lane Herklotz, Donnie Bilnoski, Cay Cannon, and Debra Gibbs, as well as Eastham Unit wardens David Sweetin and Michael Sizemore, Major Craig Fisher, case manager Charles Frizzell, and Sgt. Leontyne Haynes.

Johnson states that he was legally adopted by another inmate, Daniel Johnson. He is black and Daniel Johnson is white. In July of 2009, he was assigned to a two-man cell with an inmate named Clarence Moore, who developed animosity towards him, in part because of the adoption by a white man. In August of 2009, Moore was assigned to another cell.

The adoption was completed in March of 2010. In April of 2010, Moore approached Johnson and another inmate and made "vulgar comments" about the adoption. Johnson objected to the

1

remarks and Moore walked away. A few minutes later, the cell doors opened and Johnson went into his cell. Moore quickly followed and began to fight with Johnson. Johnson, being larger and stronger, overpowered Moore and subdued him, but Moore bit off one of his ears in the fight.

After the fight had ended, Johnson tended to his ear, and Moore, who appeared remorseful, offered to assist him. Neither Johnson nor Moore reported the incident to security staff, but they were both placed into pre-hearing detention a couple of days later, after one or more other inmates sent notes to security staff reporting the incident as well as Johnson's ear injury. An investigation was conducted, which concluded that Johnson was potentially in danger at the Eastham Unit; he was transferred off of the unit, which transfer separated him from his adoptive father.

Johnson asserted that the wardens and the major failed to properly train and supervise TDCJ personnel to be on the run when the cell doors were opened and closed. He complains that the prison officers retaliated against him because of the inter-racial adoption and because of complaints regarding the lack of officers on the run, and that they wrongfully transferred him to another unit. He says that an investigator named Haynes intentionally solicited or fabricated information about him and that the State Classification Committee participated in his wrongful transfer.

The Magistrate Judge conducted an evidentiary hearing and received certified copies of TDCJ records into evidence. On May 27, 2011, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed.

The Magistrate Judge stated that Johnson had raised two primary claims. The first of these was the claim of failure to train or supervise their subordinates to perform their duty of walking the run when cell doors are opened and closed. After discussing the legal standards applicable to claims of failure to train or supervise, the Magistrate Judge concluded that Johnson's allegations of failure to train and supervise were vague and conclusory, noting a Southern District of Texas case which held that "personal unsupported opinions," combined with a failure to explain how the alleged failure to supervise demonstrated deliberate indifference to constitutional rights and how a violation of

rights was caused by a deliberately indifferent policy of police training, were not sufficient to set out a constitutional claim.

Johnson's second claim is that he was the victim of retaliation, pointing specifically to his transfer away from his adopted father at the Eastham Unit. The Magistrate Judge noted first that Johnson has no constitutional right to be confined at any particular penal institution within the state, so the allegation that he was transferred away from the Eastham Unit did not itself set out any basis for relief, even though he was transferred away from a person with whom he has a legal, familial relationship.

The Magistrate Judge also determined that Johnson had failed to show that but for the alleged retaliatory intent, he would not have been transferred. Johnson had been assaulted by Moore, and Sgt. Haynes had reported that Johnson said that he was having problems with the Muslim community because they believed him to be homosexual. The Magistrate Judge also determined that Johnson's complaints concerning some of the comments directed at him by prison officials did not show that but for a retaliatory intent, he would not have been transferred off of the Eastham Unit. While Jessie and Daniel Johnson were entitled by law to enter into an adoption agreement, this agreement cannot allow them to claim that any decisions by prison officials which they do not like were motivated by retaliation for this adoption agreement. The Magistrate Judge thus concluded that Johnson had not set out a claim of retaliation.

Johnson also raised a number of other claims in his complaint. Although he complained that he had been "slandered," the Magistrate Judge determined that claims of slander are state law matters not cognizable under the federal civil rights act, 42 U.S.C. §1983. Johnson also complained that false information had been placed into his file, but he made no showing that the information was in fact false, or that the allegedly false information had been used to violate a constitutionally protected liberty interest. Instead, the allegedly false information was used to transfer him to another prison unit, and Johnson has no liberty interest in remaining at any particular unit.

Johnson also complained that he had been denied a legal visit with his adoptive father, but the Magistrate Judge observed that inmates have no right to face-to-face legal visits, nor is there a constitutional right to receive legal assistance from any particular inmate. Finally, although Johnson discussed incidents which had occurred at the Beto Unit, after his transfer from the Eastham Unit, the Magistrate Judge stated that Johnson had not sued anyone in connection with incidents at the Beto Unit, and so recommended that any claims which Johnson may have regarding the Beto Unit should be dismissed without prejudice.

Johnson filed objections to the Magistrate Judge's Report on June 22, 2011. In his objections, Johnson first alleges that he has set out a viable claim for failure to train or supervise. He says that his factual averments are "far from conclusory," repeating the allegation that the defendants Sizemore, Fisher, and Sweetin failed to train or supervise their subordinate officers to perform their duty to walk the runs in front of the cells when the cell doors are opened and closed. He says that these defendants repeatedly observed this failure themselves but took no corrective action, despite prior grievances having been filed and prior incidents having occurred of inmates going into other inmates' cells and starting fights.

To establish deliberate indifference on a theory of failure to train or supervise, a plaintiff must normally demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. Goodman v. Harris County, 571 F.3d 388, 395 (5th Cir. 2009). For a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform; in order for liability to attach, a plaintiff must allege with specificity how a particular training program is defective. Goodman, 571 F.3d at 395; *see also* Crissup v. Davis, civil action no. 1:06cv151, 2010 WL 3783708 (E.D.Tex., August 20, 2010, no appeal taken) (rejecting claim of failure to train or supervise after the plaintiff complained that he told prison officials that he was the victim of extortion and threats, but his pleas for help were ignored).

In this case, the Magistrate Judge correctly determined that Johnson had failed to show that Warden Sizemore, Warden Sweetin, and Major Fisher engaged in a deliberately indifferent failure to train or supervise their subordinate officers, nor that this failure led to a constitutional violation. To sustain a claim of deliberate indifference, the Plaintiff must show that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the official drew that inference. An official's failure to alleviate a significant risk which he should have perceived, but did not, while "no cause for commendation," does not amount to deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); Domino v. TDCJ-ID, 239 F.3d 752, 756 (5th Cir. 2001) (noting that deliberate indifference is "an extremely high standard to meet").

In this case, the Magistrate Judge said, Johnson has not shown that Warden Sizemore, Warden Sweetin, or Major Fisher were aware of facts from which an inference could be drawn that a substantial risk of harm existed, or that they drew that inference. At most, he has shown that guards did not walk on the runs while the doors were being opened, and that the wardens and the major knew this. Even if this showed that the supervisory officials should have perceived a risk, Johnson has not shown that they did so. His claim on this point is without merit.[1]

Furthermore, Johnson has not shown that a constitutional violation occurred as a result of the alleged failure to train or supervise. While it is true that Moore entered his cell and began to fight him, the Supreme Court has noted that not every injury suffered by one prisoner at the hands of another translates into constitutional liability. Farmer, 114 S.Ct. at 1977. Johnson has not alleged, much less shown, that the wing officers were deliberately indifferent to his safety or that the assault by Moore otherwise represented a constitutional violation.

---

[1] Even if the guards did walk the run, this would not necessarily have prevented Moore from coming into Johnson's cell; the cellblocks have multiple levels, and a guard walking the run but on a different level than Johnson's cell was located would not have been able to prevent the harm complained of.

5

Next, Johnson asserts that he never told Sgt. Haynes that the "Islamic community" had labeled him as a homosexual, but that Haynes fabricated this information. As noted by the Magistrate Judge, the anonymous notes received by security also made reference to friction between Johnson and the Islamic community. More pertinently, Johnson has not shown that the mere presence of allegedly false information in his records implicated a constitutionally protected liberty interest. As the Magistrate Judge explained, even the presence of allegedly false information in an inmate's file does not violate any constitutionally protected rights so long as a constitutional liberty interest is not thereby infringed. Johnson v. Rodriguez, 110 F.3d 299, 308-09 (5th Cir. 1997). In Johnson, allegedly false information was used to deny an inmate parole, and the Fifth Circuit stated that because Texas inmates have no protected liberty interest in parole, the allegation that the Texas Board of Pardons and Paroles considered unreliable or even false information in making parole determinations did not in and of itself assert a federal constitutional violation.

Similarly, the allegedly false information in the present case was used to justify a transfer of Johnson to a different prison unit. As the Magistrate Judge said, Johnson has no constitutionally protected liberty interest in being housed at any particular penal institution within the state. The fact that allegedly false information was relied upon in the transfer does not create a liberty interest where none existed. Johnson's objection on this point is without merit.

Johnson complains that the Magistrate Judge "credited" Haynes' report, and improperly used it to "counter" his testimony. This issue arose in the context of Johnson's retaliation claim; the Magistrate Judge stated that Johnson had failed to show that but for the alleged retaliatory motive, he would not have been transferred. Haynes reported that Johnson had complained of threats from the Muslim community, and anonymous letters also indicated that Johnson was being threatened by the Muslim community. The State Classification Committee, relying on the information which it had, including Haynes' report, approved Johnson's transfer away from the Eastham Unit. Johnson has not shown that but for an alleged retaliatory motive, he would not have been transferred.

Johnson seeks to overcome this hurdle by questioning why he, and not Moore, was transferred. He says "what reasonable warden would want to keep on his unit an inmate who runs into the cells of other inmates and starts a fight?" As the Magistrate Judge observed, the information available to the State Classification Committee showed that Johnson had been the target of the assault by Moore and was also the subject of animosity from the unit's Islamic community. Transferring Moore would have alleviated the former problem but not the latter one. Even if the information before the state committee was in error, as Johnson appears to assert, this does not render their decision to transfer him unconstitutional or retaliatory. His objection on this ground is without merit.

Johnson again complains that he was separated from his adoptive father and denied a legal visit with him. The Magistrate Judge correctly determined that Johnson has no constitutional right to be housed at the same unit with a family member, and that there is no constitutional right to face-to-face legal visits, or to receive legal help from any particular inmate. Johnson's objection on this point is without merit.

After his transfer, Johnson states that his adoptive father, Daniel Johnson, asked Major Fisher about the transfer, and Fisher, who is black, replied "that's a lesson, you don't let a white man adopt you." He states that these words are "direct evidence of retaliation." Once again, however, Johnson has failed to show that but for the alleged retaliatory motive, the transfer would not have occurred. Johnson complains that the Magistrate Judge "speculated as to what Fisher might have been thinking;" in fact, the Magistrate Judge characterized Fisher's remarks as "ill-chosen and reflecting of a lack of understanding of the true nature of the relationship" between Jessie and Daniel Johnson, but said that these remarks were not by themselves sufficient to meet the "but for" test required by the Fifth Circuit for a claim of retaliation; in other words, Johnson did not show that, in light of the security concerns discussed above, he would not have been transferred but for the alleged retaliatory motive. The Magistrate Judge's conclusion in this regard was correct, and Johnson's objections on this point are without merit.

Johnson says that his transfer from the Eastham Unit, which he says is "once of the least violent larger Texas prison units," to the Beto Unit, which he says is more violent, is a "qualifying adverse act." The Fifth Circuit has stated that transfer to a more dangerous prison as a penalty for the exercise of constitutional rights could support a claim for retaliation. Morris v. Powell, 449 F.3d 682, 687 (5th Cir. 2006). In this case, however, as the Magistrate Judge correctly determined, Johnson has not shown that he was in fact transferred to a more dangerous prison. The Eastham Unit and the Beto Unit both house the same classification levels - they house inmates classified from G-1 to G-4 (i.e. minimum to medium custody), plus administrative segregation and an outside trusty camp. *See* http://www.tdcj.state.tx.us/stat/unitdirectory/all.htm.

The Magistrate Judge noted that Johnson had offered nothing to support his characterization of the Beto Unit as "significantly more violent." In his objections, Johnson says only that it is "preposterous" to assume that prison officials did not know of the Beto Unit's purported reputation. Such a conclusory allegation is insufficient to show that the Magistrate Judge erred; otherwise, any and all transfers could be challenged as retaliatory based solely upon an inmate's subjective opinion that one prison unit is more violent, or is reputed to be more violent, than the one where the inmate prefers to be housed. Johnson's objection on this point is without merit.

Johnson states that the issues concerning the false information in his file, the denial of a legal visit, and the alleged deprivations which took place at the Beto Unit are part of his retaliation claim, and not themselves independent claims. None of these assertions suffice to show that but for the alleged retaliatory motive, these acts would not have occurred. As the Magistrate Judge observed, the Fifth Circuit has held that claims of retaliation must be "carefully scrutinized" and "regarded with skepticism. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (noting that "the prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties"). Johnson cannot simply assert that any actions by prison officials which he does not like amount to retaliation for his entering into an adoptive relationship with another prisoner. Instead, he must show that but for the alleged retaliatory motive, the action complained

of would not have occurred. Johnson v. Rodriguez, 110 F.3d at 310. Johnson has not made such a showing. His objection on this point is without merit.

Finally, Johnson complains that the Magistrate Judge did not address "other constitutional claims" which he raised, specifically citing his right to establish and maintain his father-son bond within the setting of the prison.

The Fifth Circuit has stated as follows:

> Although we agree with the plaintiffs that those three cases recognize a constitutional right to family integrity under the Fourteenth Amendment, we disagree that those cases establish that a parent's liberty interest in family integrity is a clearly established constitutional right. While the Supreme Court has recognized that parents have an abstract liberty interest in the care and management of their children, the Court has never found that interest to be absolute or unqualified.

Doe v. State of Louisiana, 2 F.3d 1412, 1416-17 (5th Cir. 1993) (citations omitted). However, imprisonment necessarily limits many rights and privileges available to the ordinary citizen. Price v. Johnson, 334 U.S. 266, 285 (1948). This means that the creation and sustaining of family ties may be subject to regulation by prison officials. *See* Turner v. Safley, 482 U.S. 78, 87 (1987) (prison regulation prohibiting inmates from marrying except with the permission of the superintendent of the prison, which permission would be given only when there were compelling reasons to do so, was analyzed to determine whether it was reasonably related to a legitimate penological interest; the Court concluded that this regulation was not reasonably related to such an interest). Turner did not hold that there was an absolute, unfettered right to marry, but merely that the regulations of the State of Missouri did not satisfy the reasonably-related standard.

As the Magistrate Judge noted, the prison officials did not prevent Johnson from establishing the adoptive relationship, and in fact recognizes its existence, as shown by Johnson's travel card denoting Daniel Johnson as his adoptive father. The fact that Johnson was subsequently transferred from the Eastham Unit after an assault and the receipt of threats was not a constitutional violation; as the Magistrate Judge stated, there is no constitutional right to be housed at the same unit as a family member. *See* Davis v. Carlson, 837 F.3d 1318, 1319 (5th Cir. 1988); Thorne v. Jones, 765 F.2d 1270, 1274 (5th Cir. 1985). This objection is without merit.

The Court has conducted a careful *de novo* review of the pleadings and testimony in this cause, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 45) is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. This dismissal is without prejudice as to any claims which Johnson may raise in the courts of the State of Texas, and without prejudice as to any claims which he may have concerning the conditions of confinement at the Beto Unit. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **15** day of **July, 2011.**

_____
Ron Clark, United States District Judge